NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: BULK [EXTRUDED] GRAPHITE PRODUCTS ANTITRUST LITIGATION | OPINION<br><br>Civ. No. 02-6030 (WHW) |

**Walls, District Judge**

Defendant Robert J. Koehler ("Koehler") has moved before this Court for an order of dismissal against the plaintiffs for: insufficient service of process, pursuant to Fed.R.Civ.P. 12(b)(5); lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2); and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The parties appeared before this Court for oral argument on January 24, 2006.

## FACTS AND PROCEDURAL BACKGROUND

Most of the facts in this case have been set forth in this Court's Opinions of April 4, 2006, granting certification of the plaintiffs' class, and of October 28, 2004, denying defendants SGL US's, SGL Carbon AG's, and SGL Carbon GmbH's motions to dismiss the Consolidated Amended Class Action Complaint (the "Amended Complaint"). In re: Bulk [Extruded] Graphite Products Antitrust Litigation, No. 02-6030, slip op. at 1 (D.N.J. April 4, 2006); In re: Bulk [Extruded] Graphite Products Antitrust Litigation, No. 02-6030, slip op. at 1 (D.N.J. October 28, 2004). Knowledge of those facts is assumed, and the facts recited herein pertain specifically to

the defendant Koehler.

Koehler is the Chairman of the Board of Management of SGL Carbon Aktiengesellschaft ("SGL AG"), a German corporation with its principal place of business in Germany. He is a citizen and full time resident of Germany and conducts business from his office in Germany. He has traveled to the United States on a limited basis for business purposes, but has never worked in or commuted to the United States. He does not have and has never had an office, a place of business, a residence, real estate, a leasehold interest, a registered agent for service of process, employees, a bank account, a post office box, or a telephone listing in the United States. Nor has he ever paid taxes in the United States or commenced suit in any court in the United States.[1]

On December 18, 2002, plaintiffs filed the initial Complaint in this action alleging various antitrust violations by multiple defendants, among them SGL AG and Koehler. The Amended Complaint was filed on April 29, 2003. On May 9, 2003, plaintiffs petitioned the Court for issuance of an order appointing APS International Limited ("APS") to serve process upon Koehler in Germany. In their motion, plaintiffs explained that "Germany (sic) law requires a court order appointing a person or entity to serve process on any defendant in Germany." On May 22, 2003, this Court issued an order authorizing APS "to effect service of process on the Defendant, Robert J. Koehler[,] in Germany in accordance with the Hague Convention and International Law within 150 days."

---

[1] Plaintiffs note, however, that in 1999, Koehler pleaded guilty in United States District Court to conspiring to fix the price of graphite electrodes in the United States and elsewhere. Transcript of Record at 13-15, United States v. SGL Carbon Aktiengesellschaft and Robert J. Koehler, No. 99-244 (June 16, 1999).

On July 7, 2003, plaintiffs delivered the documents to be served, translated into German, and a request for service, to the German Central Authority. This delivery occurred within 150 days of the May 22, 2003 Order. Plaintiffs were then dependent upon the German Central Authority to actually deliver the papers to Koehler in compliance with German law, and, by extension, the Hague Convention. The German Central Authority made its first attempt to serve Koehler on July 31, 2003, and later made two attempts to serve him on February 10, 2004 and February 19, 2004. The Central Authority claimed that it was unable to effect service because Koehler was not found at his company address, and his personal address was unknown.

Plaintiffs served interrogatories upon the SGL corporate defendants seeking Koehler's home address so service could be attempted there. The German and American SGL defendants objected to these interrogatories, and plaintiffs filed a motion to compel. On November 17, 2004, Magistrate Judge Wigenton conducted a hearing on the motion to compel, and denied the motion. On July 13, 2005, APS submitted a new request to the German Central Authority seeking to serve Koehler, this time at his home address. On August 4, 2005, the German Central Authority served Koehler, based on the July 13, 2005 request. Service of process occurred past the 150 day deadline.

Koehler now moves to dismiss for ineffective service of process, lack of personal jurisdiction, and failure to state a claim. Each of these arguments will be addressed.

**I.      Motion to Dismiss for Ineffective Service of Process**

Defendant argues that the Amended Complaint against him should be dismissed for insufficient service of process because plaintiffs violated this Court's Order of May 22, 2003, by

not serving him until August 4, 2005, well beyond the 150 day limit specified in the May 22, 2003, Order. Plaintiffs make several arguments as to why service was effective, or alternatively, why the 150 day limit should be disregarded by this Court.

    A.    Standard

"Under Fed.R.Civ.P. 12(b)(5), a complaint may be dismissed for insufficiency of service of process. However, where service of process is found to be ineffective, the court has discretion to either to dismiss or to quash service which has been made." Dimensional Communications, Inc. v. OZ Optics Ltd., 218 F.Supp.2d 653, 655 (D.N.J. 2002) (citation omitted). "A motion to dismiss under Fed.R.Civ.P. 12(b)(5) for insufficiency of service of process contends that the Defendant did not receive sufficient notice of the action as set forth in Rule 4." Petsinger v. Pa. DOT, 211 F.Supp.2d 610, 611 (E.D.Pa. 2002). "The party making the service has the burden of demonstrating its validity when an objection to service is made." Id. (citation omitted). If service of process was not sufficient, the Court has discretion to dismiss the action, but dismissal is not mandatory. See Fed.R.Civ.P. 12(b)(5); Zen Music, Inc. v. CVS Corp., No. 98 Civ. 4246, 1998 WL 912102, at *4 (S.D.N.Y. Dec. 20, 1998). "Similar to a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, in considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." Darden v. DaimlerChrysler North America Holding Corp., 191 F.Supp.2d 382, 387 (S.D.N.Y. 2002).

Service upon foreign defendants is governed by Rule 4(f), which requires that service be made in the manner prescribed by the Hague Convention or by foreign law. Fed.R.Civ.P. 4(f).

**NOT FOR PUBLICATION**

Germany is a signatory to the Hague Convention. The Supreme Court has held that compliance with the Hague Convention is mandatory when serving a foreign defendant in a signatory country. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988).

Article 2 of the Hague Convention requires all signatory nations to designate a "Central Authority" to accept requests of service from any other signatory nation. 4 Wright & Miller, Federal Practice & Procedure § 1134 at 321 (3d 3e. 2002). Article 3 requires the documents to be served to be attached to a formal request form, which is then sent to the Central Authority. Id. If the documents are free of errors, the Central Authority will serve the defendant named in the documents according to its own local laws or pursuant to the method requested by the serving party, so long as the requested method does not contradict the laws of the state where service is effected. Id. Once service has been completed, the Central Authority completes an official form, certifying the time, place, and method of service, as well as indicating who was served. Id.

With regard to time limits,

> [t]he Hague Convention does not specify a time within which a foreign country's Central Authority must effect service of the summons and the complaint, but Article 15 does provide that alternative methods of service may be used if a Central Authority does not respond within six months to the originator of the request for service.

4 Wright & Miller, Federal Practice & Procedure § 1133 at 312 (3d ed. 2002). While the 120 day time limit created by Rule 4(m) does not apply to service in a foreign country, a court may still dismiss a case for failure to serve a foreign defendant within a reasonable time under the "flexible due diligence" standard. In re Teligent, Inc., et al., 2004 Bankr. LEXIS 337, at * 11 (S.D.N.Y. 2004) (citation omitted).

B.     Analysis

This Court's Order of May 22, 2003, states that "APS International Limited is authorized to effect service of process on the Defendant, Robert J. Koehler in Germany in accordance with the Hague Convention and International Law within 150 days." (Order of May 28, 2003). While Plaintiffs appear to have submitted the summons to the Central Authority well within the 150 days, and otherwise complied with the Hague Convention, from the facts APS made a request to the German Central Authority on July 13, 2005. As a result, the defendant was not served until August 4, 2005, which was past the 150 day deadline. However, after 150 days, APS was no longer competent under the laws of this Court, nor under the laws of the Hague Convention or German law, to effect service of process.

Defendant focuses on the fact that APS submitted a new request to the German Central Authority on July 13, 2005, to effect service of process. The reason for this request was that the Central Authority made three failed attempts to serve Dr. Koehler at his place of business (based on APS's initial requests), after which APS had to submit a new request to the Central Authority in accordance with Hague Convention procedures.

Plaintiffs, on the other hand, argue that they satisfied service of process by having APS submit a properly translated set of documents to the German Central Authority on July 7, 2003 - within 150 days of this Court's May 22, 2003 Order. Plaintiffs claim that the only reason it took so long for the defendant to be served was because Koehler refused to accept service of process at his place of business. Plaintiffs filed interrogatories upon the SGL corporate defendants seeking Koehler's home address. These interrogatories were opposed, and plaintiffs filed a

motion to compel which was denied by Magistrate Judge Wigenton without prejudice. Nevertheless, plaintiffs argue that Magistrate Judge Wigenton impliedly authorized plaintiffs to continue to have the German Central Authority complete service on Koehler.

Having reviewed the facts and having considered the arguments of both parties, it is clear to this Court that plaintiffs violated the mandate of the May 22, 2003, Order by exceeding the 150 day limit for effecting service of process on Koehler. Plaintiffs have cited no case law, nor have they made a compelling argument to support their claim that once they submitted their request to the German Central Authority on July 7, 2003, the mandate of the Order had been satisfied. The Order clearly required service of process to be effected on Koehler within 150 days. Nor has there been a sufficient showing, as plaintiffs contend, that Koehler deliberately eluded service of process, such as to justify this Court's disregard of the requirements for effective service of process on foreign individuals. See, e.g., Hugel v. McNeill, 886 F.2d 1, 5 (1st Cir. 1989) (courts should not "reward defendant's action of flight"). Moreover, this Court does not agree with plaintiffs' argument that Magistrate Judge Wigenton impliedly authorized plaintiffs to continue to attempt to effect service of process. Plaintiffs' other arguments to justify service of process are likewise untenable.[2]

---

[2]Plaintiffs additionally argue the following: service on Koehler was timely; even if service was untimely, plaintiffs' prompt submission of the papers to the German Central Authority constitutes "good cause" that automatically entitles plaintiffs to an extension of time; plaintiffs followed the Hague Convention to the letter; and the Court could remedy timely service by entering an order *nunc pro tunc*. However, service plainly did not comply with the time requirements of this Court's May 22, 2003 Order; a *nunc pro tunc* order is generally "used to correct a ministerial or clerical error or oversight, and cannot be used to correct a judicial error or omission or to change or revise an order or judgment," 56 Am.Jur.2d Motions, Rules, and Orders § 58, which is not the case here; and the "good cause" extension is contained in Fed.R.Civ.P.

In spite of the fact that service was not effected within the 150 day limit, it does appear that plaintiffs did follow all of the necessary steps to effect service of process on Koehler. Through no fault of the plaintiffs, the German Central Authority was delinquent in serving Koehler. The only step the plaintiffs could have taken to remedy this situation would have been to come to this Court earlier, to request a new order granting APS authority to effect service on Koehler.

In consideration of these facts, this Court finds that it would be too drastic a measure to simply dismiss the Amended Complaint against Koehler for insufficient service of process, when there is no indication that plaintiffs were delinquent in their responsibilities. Dismissal for insufficient service of process is not warranted under these circumstances, where plaintiffs are not culpable and there has been no indication of prejudice to the defendant. 5A Wright & Miller, Federal Practice & Procedure § 1353 at 342 (3d ed. 2005) (motion to dismiss granted for insufficiency of service of process only when defect is prejudicial to the defendant, otherwise court will allow amendment of the process to correct the defect).

C.  **Conclusion**

At oral argument, this Court determined that the appropriate measure of action would be to permit plaintiffs to amend service of process, by submitting a new Order to this Court, and then proceeding to properly effect service on Koehler. On January 27, 2006, this Court signed the new plaintiffs' Order, granting APS the authority to effect service on Koehler. Defendant's motion to dismiss for ineffective service of process is denied, with leave granted to plaintiffs to

---

4(m), which does not apply to service of process upon foreign defendants, Fed.R.Civ.P. 4(f).

amend service of process on Koehler.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

Defendant argues that this Court lacks the requisite minimum or "continuous and systematic" contacts with the United States to be subject to personal jurisdiction in this Court. Plaintiffs, on the other hand, argue that this Court does have personal jurisdiction over Koehler based on the Calder v. Jones, 465 U.S. 783, 790 (1984) effects test. Plaintiffs argue that "personal jurisdiction is proper in the forum where [defendant's] wrongful acts had an effect." In re Bulk [Extruded] Graphite Products Antitrust Litig., No. 02-6030, slip op. at 15 (D.N.J. October 28, 2004). Alternatively, plaintiffs argue that Koehler is subject to personal jurisdiction under the law of the case doctrine, as this issue has already been decided by this Court.

### A. Standard

Because this case arises under federal law, the Court looks to the Due Process clause of the Fifth Amendment to guide its jurisdictional inquiry. See Max Daetwyler corp. v. Meyer, 762 F.2d 290, 293 (3d Cir.1985) (in case arising under federal patent law, court looks to due process clause of Fifth Amendment to guide jurisdictional inquiry), cert. denied, 474 U.S. 980 (1985). The Fifth Amendment inquiry incorporates the Fourteenth Amendment standards of due process established in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) and its progeny, and is satisfied when a nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316. (citations omitted).

The first question is whether the court may exercise general jurisdiction over the

defendant. General jurisdiction exists when the plaintiff can show that the non-resident defendant had "continuous and systematic" contacts with the forum. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). To establish general jurisdiction, the plaintiff must show significantly more than mere minimum contacts with the forum state. Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted). Additionally, the facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

Alternatively, if the plaintiff cannot establish general jurisdiction, a plaintiff may prove that a defendant has purposefully availed itself of a forum by showing that the defendant possessed certain minimum contacts with the forum that justify the exercise of jurisdiction. If the cause of action relates directly to a defendant's contacts with the forum state, the Court exercises "specific jurisdiction" over that defendant. Specific jurisdiction depends upon whether a defendant purposely created contacts with the forum state making it reasonable for him to "anticipate being haled into court there." See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). These contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

What constitutes minimum contacts varies with the "quality and nature of defendant's activity." Hanson, 357 U.S. at 253. In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum

and the litigation." Keeton v. Hustler Magazine, 465 U.S. 770, 775 (1984). There must be at least "a single deliberate contact" with the forum state that relates to the cause of action. United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988). The unilateral acts of the plaintiff, however, will not amount to minimum contacts. Hanson, 357 U.S. at 253. When the suit proceeds under a federal law which authorizes nationwide or worldwide service of process, a district court may aggregate a defendant's "national contacts" with the United States as a whole to determine whether a foreign defendant has sufficient contacts with the forum. See Max Daetwyler, 762 F.2d at 293.

Assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting Int'l. Shoe Co., 326 U.S. at 320). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. See World-Wide Volkswagen, 444 U.S. at 292.

Once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden of establishing, by a preponderance of the evidence, the court's jurisdiction over the defendant. IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 257 (3d Cir. 1998). "[T]he plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Patterson by Patterson v. F.B.I., 893 F.2d 595, 603-04 (3d Cir.1990); see also Stranahan Gear Co. v. NL Industries, Inc., 800 F.2d 53, 58 (3d Cir. 1986) (cursory allegation reiterated in a sworn affidavit is insufficient to satisfy the plaintiff's burden of

proof). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." Patterson by Patterson, 893 F.2d at 604.

When the court does not hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, "the plaintiff need only establish a prima facie case of personal jurisdiction," plaintiff's allegations should be taken as true, and any disputed facts should be resolved in favor of the plaintiff. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). To establish a prima facie case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant. See United States v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir.2001) ("The prima facie showing must be based upon evidence of specific facts set forth in the record... [and] go beyond the pleadings and make affirmative proof") (internal quotations omitted) (citation omitted).

**B.    Analysis**

Plaintiffs have not contested the defendant's assertion that Koehler is not subject to this Court's general or specific jurisdiction. Rather, plaintiffs have argued that Koehler is subject to personal jurisdiction based on the Calder effects test. "Generally speaking, under Calder an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." IMO Industries, Inc., 155 F.3d at 260 (citing Keeton, 465 U.S. at 780). Although the Third Circuit has not analyzed the Calder effects test in an antitrust case, it has applied the test in a business tort cause. The Circuit developed a three

part test for jurisdiction under Calder: 1) the defendant committed an intentional tort; 2) the plaintiff felt the brunt of the harm in the forum; and 3) the defendant aimed his tortious conduct at the forum. IMO Indus., Inc., 155 F.3d at 265.

Plaintiffs claim that defendant satisfies the Calder test. In paragraph 38 (by reference to paragraph 36) of the Amended Complaint, plaintiffs allege that defendant Koehler arranged early Extruded Graphite Products price-fixing meetings, where defendants entered into and participated in a contract, combination or conspiracy to suppress and eliminate competition by fixing the prices of, and allocating markets for, Extruded Graphite Products sold in the United States and elsewhere. (Amended Complaint at ¶¶ 36, 38). This is an alleged violation of antitrust law, a tort. In re Mid-Atlantic Toyota Antitrust Litig., 525 F.Supp. 1265, 1270 (D. Md. 1981) ("It is clear that a civil antitrust action is an action in tort.") (citing Simpson v. Union Oil Co. of California, 311 F.2d 764, 768 (9th Cir. 1963), rev'd on other grounds, 377 U.S. 13 (1964)). Plaintiffs have also alleged that they suffered the brunt of the harm in the United States, which is the applicable forum because plaintiffs have brought suit under Section 12 of the Clayton Act, 15 U.S.C. § 22. See In re Automotive Refinishing Paint Antitrust Litig, 358 F.3d 288, 298 (3d Cir. 2004) ("federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process"). Plaintiffs add that Koehler is not immunized from jurisdiction in the United States merely because the international conspiracy presumably produced harm in numerous other countries as well as the United States. Last, plaintiffs argue that Koehler intentionally directed his wrongful actions at the United States. (Amended Complaint at ¶ 36, 38).

Defendant argues that plaintiffs have misapplied the Calder test, particularly the third prong. They claim that the Third Circuit has defined the "expressly aimed at" component of the effects test to mean that the defendant "made the forum the focal point of the tortious activity." IMO Indus., Inc., 155 F.3d at 265. Defendant adds that plaintiffs must show that "the defendant *knew* that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id. at 266 (emphasis added)

Defendant is correct in citing the requirements for showing that the "defendant expressly aimed his tortious conduct at the forum." Id. at 266. This Court must determine whether plaintiffs have pointed to acts undertaken by the defendant which demonstrate that he "expressly aimed" his tortious conduct at the United States, and whether defendant knew that plaintiff would suffer the brunt of the harm in the United States. In so doing, the plaintiffs may not rely on the bare pleadings alone, but must cite evidence to support their claim. Patterson by Patterson, 893 F.2d at 604.

In addition to their allegation that Koehler arranged early price-fixing meetings where defendants conspired to fix the prices for extruded bulk graphite in United States (Amended Complaint at ¶¶ 36, 38), plaintiffs cite a decision of the Commission of the European Communities (the "EC Decision"), dated December 17, 2002, with respect to collusion regarding isostatic specialty graphite and extruded specialty graphite sold in European countries and the United Kingdom. According to plaintiffs, the decision catalogs various price-fixing meetings conducted by the conspirators, including Koehler. None of the paragraphs cited by plaintiffs,

-14-

however, address pricing of bulk extruded graphite in the United States. All that can be deduced from the EC Decision is that focus of the alleged conspiracy was upon European Countries:

> The topic of the meeting was the rise of prices, particularly in Germany, England, France, and Italy and the withdrawal of discounts. In addition, each participant reported on the level of prices in the different European markets. (EC Decision ¶ 296).
>
> From the description of the facts, it can be concluded that both UCAR and SGL implemented the conspiracy to increase extruded graphite prices on the Community/EEA market. (EC Decision ¶ 313).

This evidence does not show that the defendant aimed his tortious conduct at the United States.

In addition to the EC Decision, plaintiffs also cite that Koehler pleaded guilty to participating in another antitrust conspiracy relating to another graphite product, graphite electrodes. That Koehler pled guilty in the graphite electrodes case, and that he may have controlled the pricing decisions of SGL AG's United States subsidiary in that case, however, is not sufficient to show that Koehler expressly aimed his tortious conduct at the United States in *this* extruded graphite case.

Plaintiffs offer no other evidence to support their allegation that Koehler "expressly aimed" his tortious conduct at the United States. Accordingly, plaintiffs cannot rely on Calder to extend this Court's jurisdiction to Koehler in this case, and consequently, have failed to carry their burden of establishing personal jurisdiction.[3]

Alternatively, plaintiffs argue that Koehler is subject to personal jurisdiction under the

---

[3] Having determined that plaintiffs failed to satisfy the "expressly aimed at" requirement, there is no need to consider whether plaintiffs can show that the defendant "knew that the plaintiff[s] would suffer the brunt of the harm caused by the tortious activity in the forum," or even whether the plaintiffs suffered the brunt of the harm in the United States.

law of the case doctrine. "Under the law-of-the-case doctrine, 'once an issue has been decided, parties may not relitigate that issue in the same case." Ogbudimkpa v. Ashcroft, 342 F.3d 207, 210 n.7 (3d Cir. 2003) (quoting Waldorf v. Shuta, 142 F.3d 601, 616 n.4 (3d Cir. 1998)). The purpose of the doctrine is to "promote finality, consistency and judicial economy." Hamilton v. Leavy, 322 F.3d 776, 787 (3d Cir. 2003) (citation omitted). Plaintiffs argue that this Court has already decided this issue of personal jurisdiction in the October 28, 2004, Opinion, In re: Bulk [Extruded] Graphite Products Antitrust Litigation, No. 02-6030, slip op. at 1 (D.N.J. October 28, 2004), where it was determined that defendants SGL AG and SGL GmbH are subject to personal jurisdiction.

Plaintiffs cannot rely on that decision, however, as a basis for asserting personal jurisdiction over Koehler. The issue before the Court on this motion is not the same as the issues before the Court on the motions filed by SGL Carbon AG and SGL Carbon GmbH. "[P]ersonal jurisdiction is personal to each defendant." Perry v. Markman Capital Mgmt., Inc., 2002 WL 31248038, at *3 (E.D.Pa. Oct. 4, 2002). "[W]here personal jurisdiction is challenged it is the plaintiff's burden to produce evidence of each defendant's contacts with the forum." Wright v. Xerox Corp., 882 F.Supp. 399, 407 (D.N.J. 1995). Accordingly, the law-of-the-case doctrine cannot be used to assert personal jurisdiction over Koehler.

Having failed to demonstrate a basis for asserting personal jurisdiction over Koehler, plaintiffs alternatively request that this Court permit discovery with regard to the issue of this Court's jurisdiction over Koehler. "Jurisdictional discovery is ordinarily appropriate to further examine a defendant's ties with a forum state unless plaintiff's request is clearly frivolous." West

**NOT FOR PUBLICATION**

Afr. Trading & Shipping Co. v. London Int'l Group, 968 F.Supp. 996, 1001 (D.N.J. 1997) (citing American Centennial Ins. Co. v. Handal, 901 F. Supp. 892, 899 (D.N.J. 1995); Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)). This Court finds that plaintiff's request for jurisdictional discovery is critical to the determination of whether personal jurisdiction may be exercised over the defendant. Accordingly, this Court grants plaintiff's request for jurisdictional discovery.

**III.    Motion to Dismiss for Failure to State a Claim and Because it is Time-Barred**

The defendant incorporates by reference the arguments set forth by SGL AG in support of its motion to dismiss for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), and on the grounds that it is time-barred. This Court denied SGL AG's motion to dismiss in the October 28, 2004, Opinion. In re: Bulk [Extruded] Graphite Products Antitrust Litigation, No. 02-6030, slip op. at 1 (D.N.J. October 28, 2004). For the same reasons explicated in that Opinion, the Court rejects defendant Koehler's arguments for dismissal of the Amended Complaint for failure to state a claim and as time barred.

## CONCLUSION

It is on this 24th day of April, 2006,

ORDERED that Defendant's Motion to Dismiss is DENIED without prejudice; and it is further

ORDERED that Plaintiffs' request for jurisdictional discovery is GRANTED; and it is further

ORDERED that Plaintiffs are GRANTED leave to amend service of process upon the Defendant Robert J. Koehler.

                                          **s/William H. Walls**  
                                          United States Senior District Judge